# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

---

**In re**

**ARMEN D. MEGUERDITCHIAN,**

**Debtor**

**Chapter 13**
**Case No. 15-13288-FJB**

---

**MEMORANDUM OF DECISION ON**
**OBJECTIONS TO CLAIM OF HOMESTEAD EXEMPTION**

In his case under chapter 13 of the Bankruptcy Code, the debtor has claimed a Massachusetts homestead exemption in the amount of $500,000, and the chapter 13 trustee and two creditors have now objected to that exemption, arguing that 11 U.S.C. § 522(p)(1) limits the available exemption to $155,675 because, as the debtor concedes, he acquired all his interest in the exempted property, his principal residence, during the 1215-day period before he filed his bankruptcy petition. The debtor argues that the (p)(1) limitation does not apply because his interest in the property is sheltered to the extent of $500,000 by the "roll-over" safe harbor in § 522(p)(2)(B) by virtue of his having used $500,000 of the proceeds from sale of his previous residence, which was acquired prior to the beginning of the 1215-day period, to pay down the bridge loan that he used to fund purchase of the current residence. The objecting parties argue that the safe harbor is unavailable because (i) it applies only to acquisitions of title and not to acquisitions of equity by paydown of an encumbering mortgage and (ii) in any event, when that paydown occurred, the property was owned by a trust of which the debtor and his wife were beneficiaries, not, as at present, by the debtor and his wife by virtue of an eve-of-bankruptcy conveyance from the trust. For the reasons set forth below, the Court holds that the debtor has not failed to state a claim on which relief can be granted.

**PROCEDURAL HISTORY**

On August 21, 2015, Armen D. Meguerditchian ("the Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code.  In the case thereby commenced, he filed a schedule of claims of exemption and thereby claimed as exempt to the extent of $500,000 his interest in the real property in Winchester, Massachusetts that is his principal residence. The chapter 13 trustee, Carolyn Bankowski ("the Trustee"), objected to so much of this claim as exceeds $155,675 on the basis that 11 U.S.C. § 522(p)(1)(A) caps a homestead exemption at this amount when, as here, the debtor acquired his interest in the property within the 1,215 days prior to the date of filing of the bankruptcy petition. Creditors Outcome Referrals, Inc. ("Outcome") and David R. Kraus ("Kraus") (Outcome and Kraus jointly, "ORI") then joined in the Trustee's objection, relying without elaboration on the reasons articulated by the Trustee in her objection. In a response, the Debtor conceded that he had acquired all his interest in the property within the 1,215 days prior to the date of filing of the bankruptcy petition, but he contended that subsection (p)(2)(B) excluded his interest in the property from operation of the (p)(1) cap because he had transferred in excess of $500,000 of his interest from his previous principal residence into the current principal residence, the previous principal residence was acquired prior to 1,215 days preceding the petition date, and the previous and current principal residences are located in the same state.  In so stating, the Debtor essentially recited the elements of subsection (p)(2)(B), but he did not also specify the facts by which he contended these elements were satisfied.

At a preliminary hearing on their objections to the claim of exemption, the Trustee and ORI disputed the availability of the safe-harbor of § 522(p)(2)(B) to the Debtor on several grounds, among them (i) that proceeds from sale of the previous residence could not have funded the initial purchase of the current residence because the previous residence was not sold until almost two months after the current residence was purchased and (ii) by the time the previous residence was sold, the current residence had been transferred to, and was owned by, a trust. The Debtor conceded these facts and

clarified that the transfer of interest from the previous residence to the current did not occur upon his

and his wife's initial acquisition of the current residence. Rather, it occurred later, upon sale of the

previous residence, when sale in the amount of $500,000 were used to pay down a bridge loan from the

Debtor's father, which loan was secured by a mortgage on the current residence and had served to

facilitate the acquisition of the current residence before sale of the previous. The Debtor argued that

nothing in subsection (p)(2)(B) requires that the sale of the old residence precede the purchase of the

new. Nor does anything in subsection (p)(2)(B) preclude its satisfaction by payment of a mortgage loan

that encumbers the new property and was used to fund its acquisition. Regarding the fact that title to

the property was at the time held in a trust, the Debtor stated that the trust in question was a

Massachusetts nominee trust, of which he and his wife were beneficiaries, and therefore he and his wife

were at all relevant times the owners of the property under Massachusetts law.  In light of these

developments in the Debtor's articulation of his position, the Court ordered the parties to file briefs

setting forth more clearly their respective positions.

In its brief, ORI argued that, by virtue of certain facts on which the Debtor relies and that are not

in dispute, the Debtor cannot prevail. First, subsection (p)(2)(B) cannot apply because its focus is on the

interest that the Debtor held at the time he filed. He acquired that interest when the trust transferred

the property back to him and his wife, and that transaction involved no proceeds from the previous

residence. Second, subsection (p)(2)(B) cannot apply for the further reason that the increase in equity

that results from payment of a mortgage debt is not an acquisition of an interest within the meaning of

§ 522(p). In her brief, the Trustee also articulated the first of these arguments, and she further argued

that the proceeds from the previous residence could not have gone to pay down the mortgage on the

current residence because the mortgage had not yet been recorded at the time of the sale.

Upon receipt of these briefs, the Court held a further non-evidentiary hearing, then ordered the

parties to file a stipulation as to the agreed facts, upon receipt of which the Court would determine

whether an evidentiary hearing was necessary. The parties did file a joint statement in which they identified the facts as to which there is no dispute and identified other facts that the Debtor alleges but that the Trustee and ORI dispute. In the same statement, the Trustee and ORI stated that they believe the disputed facts are not material to determination of their objections to the claim of exemption.

**FACTS**

Except where otherwise indicated, the following facts are not in dispute.

1.      By deed dated December 16, 2000, the Debtor and his wife, as tenants by the entirety, took title to certain real property in Arlington, Massachusetts ("the Arlington Property"). From on or about December 16, 2000 until "sometime prior to December 8, 2014," the Arlington Property was the principal residence of the Debtor and his wife.[1]

2.      By deed dated October 14, 2000, the Debtor and his wife, as tenants by the entirety, took title to certain real property in Winchester, Massachusetts ("the Winchester Property"). The purchase price for the Winchester Property was $1,185,000.00.

3.      The Debtor and his wife borrowed the sum of $800,000.00 from the Debtor's father, Dikran Meguerditchian ("Dikran"), by promissory note and mortgage dated October 14, 2014. By this mortgage ("the Meguerditchian Mortgage"), the Debtor and his wife granted a mortgage on the Winchester Property to Dikran Meguerditchian to secure repayment of the promissory note. The Debtor and his wife were jointly and severally liable for repayment of the promissory note to Dikran.

4.      The Debtor asserts, but the Trustee and ORI do not concede, that Dikran funded the $800,000 loan with funds he obtained by drawing on a line of credit he had at Patriot Bank.

---

[1] The parties' joint statement of undisputed facts identifies the end of the period indeterminately, as "sometime prior to December 8, 2014." I understand this choice of words to indicate uncertainty about only the precise date on which the Debtor and his wife moved from the Arlington Property to their current principal residence. No one contends that the Debtor and his wife had another principal residence between the time that they occupied the Arlington Property in 2000 and the time that they moved into their current principal residence.

5.      The Debtor asserts, but the Trustee and ORI do not concede, that he and his wife borrowed the $800,000 from the Debtor's father in order to purchase the Winchester Property.

6.      The Debtor asserts, but the Trustee and ORI do not concede, that also on October 14, 2014, he and his wife established a trust known as the GAR-SAR Realty Trust ("the Trust").

7.      By deed dated October 14, 2014, the Debtor and his wife conveyed the Winchester Property to the Trust.

8.      The Debtor asserts, but the Trustee and ORI do not concede, that the Trust was a nominee trust under Massachusetts law and that he and his wife were the beneficiaries of the Trust.

9.      The trustee of the Trust never recorded a declaration of homestead for the Winchester Property.

10.     On December 8, 2014, the Debtor and his wife sold the Arlington Property and, from the sale, received net proceeds of $517,754.65.

11.     The Debtor asserts, but the Trustee and ORI do not concede, that with the net proceeds from sale of the Arlington Property, he and his wife repaid some of the funds that had been advanced against Dikran's line of credit at Patriot Bank to fund the $800,000 loan, and that, on account of this payment, the balance due on the Meguerditchian Mortgage was reduced by the same amount. In the joint statement of undisputed facts, the parties do not indicate when this payment occurred or the amount of the payment. Elsewhere, the Debtor asserts, but the Trustee and ORI do not concede, that the payment was made a few days after December 8, 2014 and that the amount of the payment was $500,000.  A true copy of the check evidencing this payment was attached to the joint statement of undisputed facts. It is dated December 15, 2014 and made out to Patriot Community Bank in the amount of $500,000.[2]

---

[2] I understand that the Trustee and ORI concede the fact of the transfer effected by this check but do not concede (i) that the funds it transferred were proceeds from sale of the Arlington Property or (ii) that the payment was

12.     On December 23, 2014, the Meguerditchian Mortgage was recorded at the Middlesex South Registry of Deeds.

13.     Also on December 23, 2014, the deed by which the Debtor and his wife had conveyed the Winchester Property to the Trust was recorded at the Middlesex South Registry of Deeds.

14.     By deed dated August 20, 2015, the trustee of the Trust conveyed the Winchester Property to the Debtor and his wife, as tenants by the entirety. This deed was recorded in the Middlesex South Registry of Deeds on August 21, 2015. When this deed was recorded, the Meguerditchian Mortgage was of record and encumbered the Winchester Property.

15.     Also on August 21, 2015, the Debtor and his wife filed a joint declaration of homestead, dated August 20, 2015, regarding the Winchester Property.

16.     Also on August 21, 2015, the Debtor filed his petition for relief under chapter 13 of the Bankruptcy Code.

**JURISDICTION**

The matters before the court are objections under 11 U.S.C. § 522(p) to a debtor's claim of exemption under § 522(b). The objections arise under the Bankruptcy Code and in a bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference (codified in the district court's local rules at L.R. 201, D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). They are core proceedings within the meaning of 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(B) (core proceedings include allowance or disallowance of exemptions from property of the estate). The bankruptcy court accordingly has authority to enter final orders as to the objections.

---

made to pay down the $800,000 loan by which Dikran had enabled the Debtor and his wife to purchase the Winchester Property.

**ANALYSIS**

The Objecting Parties' sole basis of objection to the Debtor's homestead exemption is 11 U.S.C.

§ 522(p)(1). In relevant part, it limits the amount of recently-acquired interest in a residence that a

debtor can claim as exempt under a state homestead exemption. In structure, § 522(p) sets forth a

general rule in subsection (p)(1) and then exceptions to it in subsection (p)(2). The general rule is as

follows:

> (1)  Except as provided in paragraph (2) of this subsection and sections 544
> and 548, as a result of electing under subsection (b)(3)(A) to exempt
> property under State or local law, a debtor may not exempt any amount
> of interest that was acquired by the debtor during the 1215-day period
> preceding the date of the filing of the petition that exceeds in the
> aggregate $155,675[3] in value in—
>
> > (A)  real or personal property that the debtor or a dependent of the
> > debtor uses as a residence; . . . or
> >
> > (D)  real or personal property that the debtor or dependent of the
> > debtor claims as a homestead.

11 U.S.C. § 522(p)(1). This rule applies where, as here, a debtor (i) elects under § 522(b)(3)(A)

to exempt property under state or local law[4] and (ii) under such state or local law claims as

exempt an "amount of interest that was acquired by the debtor during the 1215-day period

preceding the date of the filing of the petition." Subject to certain exceptions, it limits the

amount of such interest that may be claimed as exempt to $155,675. The cap applies only to

---

[3] This dollar amount is adjusted every three years by the Judicial Conference of the United States. On April 1, 2016, the dollar amount increased to $160,375. This case was commenced on August 21, 2015 and, as of that date, the dollar amount was $155,675. This case is governed by the limit in place on the date of its commencement.

[4] It does not apply to property exempted under § 522(b)(3)(B), which permits a debtor to exempt, in addition to the property specified in subsection (b)(3)(A), "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process  under applicable nonbankruptcy law[.]" Here, it is uncontroverted that the Debtor had, immediately before the commencement of the case, an interest in his principal residence as a tenant by the entirety. However, he did not cite the tenancy by the entirety as a basis for his claim of exemption; he has invoked only the Massachusetts homestead statute. I express no opinion on the extent to which the tenancy by the entirety may afford him an alternate or additional basis for exempting the same property.

such "amount of interest" as the debtor acquired during the 1215-day period, not to any

amount of interest in the same property that the debtor may have acquired *before* the 1215-

day period. *In re Welch*, 486 B.R. 1, 4-5 (Bankr. D. Mass. 2013) (cap in § 522(p)(1) applied only

to value of portion of debtor's interest that was acquired in the 1,215 day period). In this

instance, it is undisputed that the Debtor acquired *all* his interest in the homestead property

during the 1215-day period and therefore that, if it applies, the cap limits the whole of his

homestead exemption.

The general rule is subject to the two exceptions in § 522(p)(2). The Debtor invokes the

exception in subsection (p)(2)(B), which states:

> For purposes of paragraph (1), any amount of such interest does not include
> any interest transferred from a debtor's previous principal residence (which
> was acquired prior to the beginning of such 1215-day period) into the
> debtor's current principal residence, if the debtor's previous and current
> residences are located in the same State.

11 U.S.C. §522(p)(2)(B). This exception applies where (i) the debtor's previous principal residence was

acquired prior to the beginning of the 1215-day period preceding the date of the filing of the bankruptcy

petition, (ii) the previous principal residence is located in the same state as the current principal

residence, and (iii) there was a transfer of interest from the previous principal residence into the current

principal residence. When these three requirements are met, the exception excludes from the cap any

such transferred interest.

A party in interest may file an objection to a claim of exemption, Fed. R. Bankr. P. 4003(b)(1),

and in any hearing on such an objection, the objecting party has the burden of proving that the

exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). In this instance, however, the Debtor

concedes that he acquired his entire interest in the exempted property within the 1,215 days prior to

the date of filing of the bankruptcy petition. The burden of the Objecting Parties under § 522(p)(1) is

thus satisfied. To escape the limitation to which this fact would give rise under § 522(p)(1), the Debtor

invokes subsection (p)(2)(B), which amounts to an affirmative defense. Because it is an affirmative

defense, the burden of establishing its applicability falls on the Debtor.

The Objecting Parties concede that the first two requirements of the (p)(2)(B) exception are

satisfied but maintain that, on the agreed facts, the third cannot be satisfied and therefore that they are

entitled to an order sustaining their objections as a matter of law. In essence, the Objecting Parties

argue that the Debtor fails to state a claim on which relief under subsection (p)(2)(B) can be granted. To

survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must

accordingly determine whether, on the facts alleged—both those to which the parties have stipulated

and those remaining to be proven—the Debtor has stated a plausible claim of entitlement to the benefit

of the subsection (p)(2)(B) exception. The Court may not "attempt to forecast a plaintiff's likelihood of

success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and

unlikely.'" *Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (citing *Twombly*, 550 U.S.

at 556). The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that

the plaintiff is asking the court to draw from the facts alleged in the complaint." *Id*.

### a.   No Use of Sale Proceeds for Initial Acquisition

The first basis on which the Trustee argued that subsection (p)(2)(B) affords no shelter to the

Debtor is that, because the Debtor acquired his current principal residence before he sold the previous

principal residence, no interest from the previous can have been used to purchase the current. The

Debtor has since clarified that he does not contend that proceeds from the previous residence were

used in his and his wife's initial acquisition of the current residence in August 2014. Rather, he contends

that the requisite transfer occurred later, just after sale of the previous residence, when (he alleges)

proceeds of that sale were used to pay down his father's mortgage on the current residence. This basis

of objection is accordingly moot.

### b.   Equity or Title?

ORI argues that the Debtor cannot prevail because a payment on a mortgage loan that

encumbers the current principal residence, resulting in an increase in the owner's equity in the property,

is not an acquisition of an interest within the meaning of § 522(p). It is ORI's position that "interest," as

that term is used under both subsection (p)(1) and subsection (p)(2)(B), means title only, not equity. ORI

contends that this construction is in keeping with dictionary and state law definitions of "interest" and

"acquired," principles of statutory construction, the legislative history of and intent behind § 522(p), and

the case law on point. The Debtor responds that a transfer of equity, not title, from one residence to

another is precisely what subsection (p)(2)(B) contemplates, and the case law is in accord. He points out

that § 522(p) speaks not just of interest but of "*amount of* interest."

The question is one of statutory interpretation. The starting point is the words of the statute. If

the statutory language, considered as a whole, is clear, not ambiguous, the inquiry ends there. I

therefore begin by examining the words of the statute.

The word "interest" appears in both relevant subsections, (p)(1) and (p)(2)(B). It is not expressly

defined, either in § 522 or elsewhere in the Bankruptcy Code, except that § 541(a)(1) makes clear that

the "interests of the debtor in property" that comprise the bankruptcy estate, from which property is

exempted under § 522, can be solely equitable in nature. 11 U.S.C. § 541(a)(1) ("The commencement of

a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the

following property, wherever located and by whomever held: (1) Except as provided in subsections (b)

and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the

commencement of the case.").

Subsection (p)(1) states: "a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $155,675 in value in" certain real or personal property. What this subsection prohibits a debtor from claiming as exempt is not an interest but "any amount of interest" that "exceeds in the aggregate $155,675 in value." The focus is not the sole word interest but "any amount of interest." It suggests something quantifiable. In combination with the limit of "$155,675 in value," the clear focus is on quantifiable economic value. All of this is consistent with equity. Equity has—indeed it *is*—quantifiable economic value; and there is nothing unusual in speaking of an "amount of" equity. Title, too, can have quantifiable economic value, because title is a right to the equity in the property to which the title attaches. On the other hand, it would be strange to speak of someone having an "amount of" title, so title sits uneasily with subsection (p)(1), at least in this respect.

Subsection (p)(2)(B), which creates an exception, does so by limiting the meaning of the phrase "any amount of interest": "For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence . . . into the debtor's current principal residence." This subsection removes from the meaning of "any amount of interest" a particular amount of interest that, but for this exclusion, would be included in it. In doing so, subsection (p)(2)(B) makes clear that the common subject of both subsections, "any amount of interest," is something that can be transferred from one residence into another. This rules out any definition of "amount of interest" that reduces it to title. Equity in one residence can be transferred to another, but title in one residence cannot be transferred into another residence. It makes no sense to speak of transferring title from one property to another. Title is always property-specific, specifying the relationship of the title-holder to the property. The conclusion is clear and unavoidable: in subsection (p)(2)(B), "amount of interest" means equity.

The normal rule of statutory interpretation is that "identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez,* 546 U.S. 21, 34, 126 S. Ct. 514, 523, 163 L. Ed. 2d 288 (2005). Here that presumption is confirmed because subsection (p)(2)(B) is expressly a limitation of what subsection (p)(1) means by the very same phrase, "amount of interest." It begins: "For purposes of paragraph (1), any amount of such interest does not include . . . [.]" But for this limitation, subsection (p)(1) would apply to what subsection (p)(2)(B) excludes. It follows that, in subsection (p)(1) as in subsection (p)(2)(B), "amount of interest" means equity.

This reasoning and conclusion is consistent with the majority of courts that have addressed this issue. In *Soule v. Willcut (In re Willcut)*, 472 B.R. 88, at 93-97 (BAP 10th Cir. 2012), the bankruptcy appellate panel held that "interest" as used in 11 U.S.C. § 522(o), providing for reduction of the value of a debtor's interest in homestead property to the extent that such value is attributable to fraudulent conversion of nonexempt assets within ten years of bankruptcy, refers to equity, not title. In reaching this conclusion, the panel placed heavy reliance on use of the same word, "interest," in neighboring subsection 522(p). There, the panel concluded, a title definition would render nonsensical both the phrase "any amount of interest" (because equity is quantitative but title is not) and the transferability of interest that is presumed in subsection (p)(2)(B) (because equity is transferable but title is not). *Id*. at 96-97. The panel concluded that in § 522(p), interest plainly means equity, and therefore interest must also mean equity in § 522(o).

In *Parks v. Anderson*, 406 B.R. 79, 88-95 (D. Kansas 2009), when asked to determine whether the cap in subsection (p)(1) applied to a debtor's acquisition of equity, by use of non-exempt cash to pay down a mortgage, the court ruled that "interest" in (p)(1) referred to equity, not title, and therefore that the debtor had acquired an amount of interest by the paydown. The court reasoned that "amount," in the phrase "any amount of interest," implies value, and that if Congress had intended to restrict "interest" to title, it would have done so by excluding the phrase "any amount of" preceding the term.

*Id*. at 94. The statutory language shows that "interest" refers to "a quantitative or monetary value—a concept consistent with equity." *Id*. The court also noted that a title definition would make subsection (p)(2)(B) incomprehensible: "a person does not transfer title from one residence to another, but instead, transfers equity." *Id*.

In *In re Rasmussen*, 349 B.R. 747, 756-758 (Bankr. M.D. Fla. 2006), the court was called upon to determine whether "interest" acquired in subsection (p)(1)'s 1215-day look-back period included equity that accrued by virtue of appreciation during that period. The Court determined that interest means equity in the property, not merely ownership interest or title, but also that it does not include such equity as is acquired passively, by appreciation. Regarding the holding that interest means equity, the Court found the language of the statute dispositive. First, "interest" used in conjunction with "amount" is a quantitative term that can be used in a commonsense and straightforward manner of equity but not of title.  *Id*. at 756. "A homeowner may be thought of as having an amount of equity in a home. It would be unusual to refer to a homeowner having an amount of fee simple ownership in a home." *Id*. Second, "section 522(p)(2)(B) defines 'interest' through usage to mean the debtor's equity in the property—not the debtor's fee simple interest. While one may roll equity from one property to another, one does not roll a fee simple property ownership interest from one property to another." *Id*.

The same reasoning and conclusion were followed and dispositive in three other cases that approached the issue from another direction. In these cases, the courts were asked to determine whether a debtor's acquisition of homestead status, and the benefits of that status under state law, for a long-owned residence constituted an acquisition of an amount of interest for purposes of § 522(p)(1). Each held that the designation or acquisition of homestead status was not an acquisition of an amount of interest for purposes of § 522(p)(1). In *In re Rogers*, 354 B.R. 792, 798 (N.D. Tex. 2006), *aff'd on other grounds* (taking no position on whether interest includes equity or just title), 513 F.3d 212 (5th Cir. 2008), the Court reasoned that the meaning of "interest" in § 522(p) is unambiguous, requires a

13

quantitative, monetary measure, and, like equity, must be capable of being rolled over from one home

to another. Likewise, in *In re Reinhard*, 377 B.R. 3I5, at 320 (Bankr. N.D. Fla. 2007), the court, citing

*Rogers*, found that that there were "several indications in the text of § 522(p) that Congress intended

the term 'interest' to refer a quantitative or monetary value in property." Likewise, in *In re Lyons*, 355

B.R. 387, 390-91 (Bankr. D. Mass. 2006), Judge Rosenthal followed *Rogers* in holding that because "the

term 'interest' refers to some quantitative amount of legal or equitable value," the classification of

property as a homestead is not an acquisition of interest within the meaning of § 522(o) or (p).

Two courts have held that "interest" in §522(p) means only title and not equity.  In *In re Blair*,

344 B.R. 374 (Bankr. N.D. Tex. 2005), the court held that the debtors' increased equity in their residence,

which resulted from their making regular mortgage payments on their home during the 1,215-day

before the filing of their bankruptcy petition, was not an "interest acquired" within the meaning of §

522(p)(1). The court based its decision on the meaning of "acquire," stating that "one does not actually

'acquire' equity in a home. One acquires title."  *Id*. at 376. For several reasons, *Blair* is not persuasive.

First, the court supplied no definition for "acquire" and did not explain why equity cannot be acquired.

Second, the court did not grapple with the language in § 522(p) that speaks of "amount of" interest and

of its "value" "in the aggregate" and contemplates its being transferred from one property to another.

Third, the court expressly acknowledged that "[subsection (p)(2)(B)] allows for rollover by debtors of *the*

*equity* in one home to another home located in the same state," *id*. at 377 (emphasis added), yet failed

to appreciate or address the difficulty this posed for its construal of "interest" in subsection (p)(1) as

title, not equity.

*Blair*'s reasoning was followed in *In re Sainlar*, 344 B.R. 669 (Bankr. M.D. Fla. 2006). In *Sainlar*,

the court decided whether the debtors' interest in their homestead, which they acquired four years

prepetition but which appreciated considerably in the 1210-day period, causing considerable growth in

their equity, was, to the extent of the appreciation in that period, an "interest" or "amount of interest"

they acquired in that period. The court held that "interest" in §522(p) means only title and not equity,

and therefore the growth in the debtors' equity from appreciation was not subject to the cap in

subsection (p)(1). As in *Blair*, the court based its decision on the meaning of acquire: "Title to real

property is acquired, equity is not." *Id*. at 673. *Sainlar* is unpersuasive for the same reasons as is *Blair*.

Though the court supplies broad dictionary definitions of acquire and interest,[5] the court does not

explain—nor is it evident—why interest so defined cannot include equity, much less why equity cannot

be acquired, say by paying down one's mortgage. Also, as in *Blair, Sainlar* elided all consideration of the

language in § 522(p) that speaks of interest in terms of quantitative economic value, capable of being

transferred from one property to another.

ORI contends that the case of *Bankowski v. Aroesty (In re Aroesty)*, 385 B.R. 1 (B.A.P. 1st Cir.

2008), too, stands for the proposition that interest means title as opposed to equity. In *Aroesty*, the

bankruptcy appellate panel was called upon to decide whether the cap in subsection (p)(1) applied to

the debtor's interest in her home, where she had acquired title to that home within the 1,215-day look-

back period from a Massachusetts nominee trust that had owned it for the previous seven years, during

all of which she had been the trust's sole beneficiary. Without discussion, the panel construed interest in

§ 522(p) to mean "'some legal or equitable interest that can be quantified by a monetary figure,' . . . or

simply as 'equity in the homestead.'" *Id*. at 7. The panel then stated that because the debtor had

obtained "title interest" within the look-back period, and this interest had a value of $406,512, the

amount of the debtor's equity in the property, the "title interest" is an interest within the meaning of

subsection (p)(1) and therefore subject to the subsection (p)(1) cap. This decision cannot stand for the

proposition that interest means title because the definition it employed stated that interest means

---

[5] "The plain import of the word [acquired] is "obtained as one's own." Black's Law Dictionary sets forth "acquire" means: "[t]o gain possession or control of; to get or obtain." "Interest" is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property."" *In re Sainlar*, 344 B.R. at 672-73.

15

"equity in the homestead."[6] In any event, the panel was not called upon to apply or construe subsection

(p)(2)(B) or its bearing on the meaning of interest in (p)(1). Moreover, the statement of facts in *Aroesty*

does not indicate whether the equity that the debtor acquired when she obtained legal title was equity

she also had as beneficiary of the trust just prior to the transfer from the trust to her.  If, in obtaining

legal title, the debtor obtained equity of $406,512 in which she had not previously had an equitable

interest as beneficiary, *Aroesty* would have a different meaning than if the acquisition of title was

merely a change in the nature of an interest in equity that already existed. For these reasons, I find little

guidance in *Aroesty*.

I am satisfied that the majority position is by far the more persuasive, that "interest" in § 522(p)

is plain in meaning and can only mean equity. ORI advances three further arguments why I should resist

that conclusion.

First, it argues that equity is not something that one can acquire; that is, "acquire" as used in §

522(p)(1) is compatible only with title, not equity. I disagree.  As ORI concedes, the verb "to acquire" is

not defined in the Bankruptcy Code. The Supreme Court has stated that the plain import of acquired is

"obtained as ones' own." *Helvering v. San Joaquin Fruit & Investment Co.*, 297 U.S. 496, 499, 56 S.Ct.

569, 80 L.Ed. 824 (1936). Likewise, Black's Law Dictionary defines acquire as "[t]o gain possession or

control of; to get or obtain." Black's Law Dictionary 24 (7th ed. 1999). The use of the word acquire, so

defined, is wholly in keeping with these definitions. Equity is that portion of the value of a property that

exceeds the mortgages and other encumbrances on the property, the owner's share of its value. The

extent of equity varies with two factors: the value of the property and the amount of the debt

encumbering it. One acquires equity by paying down a mortgage or other encumbrance (provided that,

after the payment, the value exceeds the remaining encumbrances). As the *Sainlar* court noted, equity

---

[66] In fact, the "definition" was two definitions, and the other used the word it defined in the definition. The panel
did not indicate how it reconciled its decision with the intricacies of its double definition.

"is not a constant, but fluctuates based upon market conditions and when mortgage principal is paid." *In re Sainlar*, 344 B.R. at 673. The fact that equity fluctuates, and does not have the fixity of title, is not reason to conclude that it cannot be acquired. As the court held in *Rasmussen,* a debtor may "acquire" equity within the meaning of § 522(p)(1) by, among other means, making a down payment and paying down the mortgage. *In re Rasmussen* 349 B.R. at 757.

Second, ORI argues that if the cap in subsection (p)(1) is deemed to apply to mortgage payments that increase equity, it will produce mischievous results. ORI poses the hypothetical case of a debtor that made a $200,000 balloon payment at the end of a 15-year mortgage within three years of the debtor's bankruptcy filing. The short answer is that where, as here, the language of the statute is clear, the court is not free to consider what Congress may have intended by way of policy results. Much less is a court ever free to construe the statute according to its own appraisal of the policy pros and cons. In any event, § 522(p)(1) allows equity acquired in the 1,215 days to be claimed as exempt to the extent of $155,675.  One may safely observe that the cases in which debtors file a bankruptcy petition after having acquired equity in excess of this amount by virtue of ordinary mortgage payments in the previous 1,215 days are exceedingly rare. And few debtors who are capable of funding a $200,000 balloon payment find themselves needing bankruptcy relief within 1,215 days of that payment.

Third, ORI argues that if the cap in § 522(p) applies to mortgage payments that increase equity, then § 522(p) comes "very close" to covering what the Bankruptcy Code already covers in § 522(o), which would render § 522(p) redundant. Section 522(o) states:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a),
> the value of an interest in--
>
> > (1) real or personal property that the debtor or a dependent of the
> > debtor uses as a residence;
> > (2) a cooperative that owns property that the debtor or a dependent
> > of the debtor uses as a residence;
> > (3) a burial plot for the debtor or a dependent of the debtor; or
> > (4) real or personal property that the debtor or a dependent of the
> > debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion
of any property that the debtor disposed of in the 10-year period ending on
the date of the filing of the petition with the intent to hinder, delay, or
defraud a creditor and that the debtor could not exempt, or that portion that
the debtor could not exempt, under subsection (b), if on such date the
debtor had held the property so disposed of.

11 U.S.C. § 522(o). Subsection (o) prevents a debtor from claiming as exempt so much of the value of

the four listed types of assets, mostly homestead property, as is attributable to the disposition of non-

exempt, or non-exemptible, assets within ten years before the bankruptcy filing with intent to hinder,

delay, or defraud a creditor. Its concern is with conversion of non-exempt assets, primarily cash, into

exempt homestead property. To be sure, there will be instances in which transfers that trigger the limit

in § 522(p)(1) will also trigger the reduction in an otherwise available homestead exemption by

operation of § 522(o), but the existence of overlap does not make § 522(p) redundant. Subsection (o)

has a ten-year look back, requires proof of intent to hinder, delay, or defraud a creditor, and reduces the

otherwise available exemption only by the value of the property disposed of. Subsection (p) has a look-

back of only 1,215 days, applies regardless of intent, and, even where it applies, allows the exemption of

the acquired interest to the extent of $155,675 plus such further amount as the debtor may qualify for

under subsection (p)(2)(B). More to the point, the overlap of these two subsections would exist

regardless of whether payment on a mortgage, resulting in an increase in equity, were deemed the

acquisition of an interest in subsection (p). Both subsections could still apply to, among other things, the

use of non-exempt funds to make the down-payment on a new exemptible homestead. The reach of

subsection (o) presents no cause for treating the acquisition of equity by paydown of a mortgage any

differently. Accord, *Parks v. Anderson*, 406 B.R. at 95 (finding no conflict between § 522(o) and § 522(p)

in defining "interest" as equity).

For these reasons, I conclude that interest in §522(p) means equity, including such as is acquired

by payment of a mortgage encumbering the homestead.

### c. Focus on Most Recent Title Only?

ORI also argues that "[t]he homestead cap imposed by § 522(p)(1) is triggered by the temporal event of the debtor's acquisition of his present interest in the property," and that the language in § 522(p)(2)(B), creating the exception to that cap, is likewise "tied explicitly to the interest acquisition event referenced in § 522(p)(1)." In other words, ORI contends, the exception contemplates a scenario in which a debtor acquires his *present* title through a contemporaneous transfer—or "rollover"—of the proceeds from the sale of a previous residence. Accordingly, "the dispositive acquisition event for the Debtor was his acceptance and recordation of the deed from the Trust the day before the Petition Date," and any alleged rollover by the Debtor occurred well in advance of his acquisition of the Winchester Property and increased the equity position of the trust, not of the Debtor.

The Trustee takes this same position, albeit with less elaboration, arguing that the safe harbor in subsection (p)(2)(B) is unavailable because the proceeds from the previous residence were not used to acquire the title that the debtor held when he filed his bankruptcy petition, the "interest" he now seeks to claim as exempt.

In response, the Debtor argues that "interest" means equity, not title, that he first acquired the equity in question with the proceeds from sale of the previous residence (by virtue of the mortgage paydown), and that the change in the form of his title, which effected no change in the extent of his equity in the property, was therefore insignificant for purposes of subsection (p)(2)(B). He held the same equity—and therefore the same amount of interest—continuously, albeit in two different forms, from the time of the mortgage paydown through the date of the bankruptcy filing. The Debtor also emphasizes that the abuses that § 522(p)(1) was designed to prevent simply do not exist here: his transfer of equity from the previous residence to the current did not increase the extent to which the equity in the former residence could be claimed as exempt.

19

In considering this issue, I emphasize that this matter is before me as if on a motion to dismiss for failure to state a claim on which relief can be granted. The question is whether the Debtor has pled facts on which he might plausibly be entitled, under subsection (p)(2)(B), to except his "interest" in the homestead property from the cap in subsection (p)(1). At this juncture, I do not know what the evidence will show about the nature of the trust that held title to the property when the transfer in question was made, or about the extent of the debtor's beneficial interest in and control over that trust during the relevant period. For present purposes, I must accept as true what the Debtor has alleged: that, from the date on which he and his wife used proceeds from sale of the previous residence to pay down the mortgage on the current residence, he and his wife were at all times the only beneficiaries of the trust, and that the subsequent conveyance from the trust to him and his wife as tenants by the entirety did not increase the extent of his equity in the property.

My starting point is again with the words of the statute, and specifically with my holding above that, in § 522(p), interest means equity. On the facts alleged, the Debtor acquired his interest, his equity, by paydown of the mortgage. At that time, he had a beneficial interest in the trust that owned the property, and he had equity in the property by virtue of that beneficial interest in the trust. When the trust later conveyed the property to the Debtor and his wife as tenants by the entirety, his title changed, but the extent of his equity did not. That is, the conveyance was not an event by which equity was acquired. It effected a change only in the manner in which the Debtor held equity that he had acquired earlier.

Nothing in subsection (p)(1) or (p)(2)(B) compels a focus on events that follow the acquisition of equity and affect only the manner in which previously acquired equity is held. Subsection (p)(1) looks only for "any amount of interest that was acquired by the debtor . . . in real or personal property that the debtor or a dependent of the debtor uses as a residence" or "claims as a homestead." 11 U.S.C. § 522(p)(1)(A) and (D). And subsection (p)(2)(B) excludes from the (p)(1) cap such "amount of interest"—

that is, of equity—as was "transferred from a debtor's previous principal residence into the debtor's current principal residence." 11 U.S.C. § 522(p)(2)(B). Notably, this subsection requires only a transfer "into the debtor's current principal residence"; it does not require that the transfer have funded the acquisition of the current form of title of the current principle residence. The argument advanced here by ORI and the Trustee require that I read into § 522(p)(2)(B) a requirement that simply is not there.

Nor should this be surprising. As the Debtor points out, the abuses that § 522(p)(1) was designed to prevent simply do not exist here. In the transfer at issue, the Debtor did not convert non-exempt assets into exemptible form. Rather, equity in the prior residence became equity in a new residence in the same state, precisely the kind of transfer that subsection (p)(2)(B) was designed to protect. This transfer did not improve the Debtor's position vis-à-vis his creditors.  I do not rely on this legislative history to resolve ambiguity in the statute; the statute is clear that interest means equity and that the focus of the statute is on events by which a debtor acquires equity. The legislative intent merely shows that there is no reason to read into the statute a requirement that is not in the statutory language.

To my knowledge, this issue has been dealt with in only one other case—as it happens, a case from this district.[7] In *In re Welch*, 486 B.R. 1 (Bankr. D. Mass. 2013), the court was faced with a debtor who, long before commencement of the 1,215-day look-back period, first acquired title to her homestead in her own name. Within the look-back period, however, she transferred the property to a trust, a Massachusetts nominee trust, of which she was both trustee and holder of ninety-nine percent

---

[7] It appears that this argument was not made in the *Aroesty case*, discussed above, though the facts would have lent themselves to it. The debtor had acquired title to her home within the 1,215-day look-back period from a Massachusetts nominee trust that had owned it for the previous seven years, during all of which time she had been the trust's sole beneficiary. The bankruptcy appellate panel held that by the transfer from the trust, the debtor had acquired "title interest," and this triggered application of the § 522(p)(1) cap. The Debtor had argued that an individual who owns a beneficial interest in the subject property beyond the 1,215–day period and later becomes the title owner, does not acquire an "interest" by recording a declaration of homestead during the requisite period. The Debtor had apparently not argued, and the panel did not address (at least not expressly), whether, because she had had beneficial interest in property through the trust until she acquired legal title, the acquisition of title was not an acquisition of interest within the meaning of subsection (p)(1).

of the beneficial interest. Her minor son held the remaining one percent. Then, approximately three

months before the bankruptcy filing, the Debtor caused her son to transfer his beneficial interest to her,

which consolidated all legal and beneficial interest in her. In her bankruptcy case, she claimed her equity

in the homestead, some $294,916, as fully exempt. The trustee objected, arguing that the exemption

was limited by § 522(p)(1) to $146,450[8] because, under Massachusetts law, the son's transfer of his

interest to the debtor effected a merger of all legal and equitable interest that terminated the trust by

operation of law and effected a transfer of title to the property from the trust to the debtor on the date

of merger, resulting in the debtor's "acquisition" of her entire "interest" in the Andover property within

the lookback period.[9] In material part, Judge Hoffman held that even if the merger effected an

"acquisition" by the debtor within the meaning of subsection (p)(1), the "interest" so acquired would

have been only the one percent of beneficial interest in the property that she had not previously held.

> Before the transfer the value of the trust res would have been shared by
> Ms. Welch and her son 99% and 1% respectively. With the transfer of
> the 1% Ms. Welch did not suddenly see the value of her interest
> increase from 0% to 100% but rather from 99% to 100%.

*In re Welch*, 486 B.R. at 4-5. Judge Hoffman went on to find that the value of this one percent of total

equity in the property was much less than the statutory limit, and he consequently concluded that

subsection (p)(1) required no disallowance of any portion of the claimed exemption. The case thus

stands for the proposition that a simple change in the form of title to equity that a debtor already owns

is not an acquisition of interest within the meaning of subsection (p)(1).

The same issue was raised on appeal in *Khan v. Bankowski*, 375 B.R. 5 (B.A.P. 1st Cir. 2007),

where the property was held for nine years in a family trust of which debtor and his brother were

trustees and the only beneficiaries, then transferred by the trust to the debtor and his brother as joint

---

[8] This was the limit imposed by subsection (p)(1) at the time.
[9] The bankruptcy trustee evidently did not argue, and the court certainly did not address, whether and to what extent the earlier transfer from the debtor to the trust, within the look-back period, triggered the § 522(p)(1) cap.

tenants within 1,215 days of bankruptcy filing. The evidence below did not include the trust or indicate

the proportion of the debtor's interest in it or that it was a nominee trust. The bankruptcy appellate

panel ruled that, because the debtor had not made the argument below (that the title he acquired upon

transfer from the trust did not result in acquisition of any new interest in the property), he could not

make it on appeal, and that where he had submitted no evidence of the nature and extent of his interest

in the trust, the bankruptcy court had properly concluded that he had acquired his interest upon

transfer from the trust. The *Khan* panel was therefore not required to, and did not, consider whether a

mere change in the form of title to equity that a debtor already owns is not an acquisition of interest

within the meaning of subsection (p)(1). However, *Khan* at least stands for the proposition that a debtor

advancing this argument—that an acquisition of title did not constitute an acquisition of interest

because the debtor already held that interest in a different form—bears the burden of proving the

nature and extent of the interest he or she held at the time—and I agree.

The three acquisition-of-homestead cases, all discussed above, though not squarely on point,

are nonetheless helpful. *In re Rogers*, 354 B.R. 792, 798 (N.D. Tex. 2006); *In re Reinhard*, 377 B.R. 3I5, at

320 (Bankr. N.D. Fla. 2007); and *In re Lyons*, 355 B.R. 387, 390-91 (Bankr. D. Mass. 2006).  In each, the

court held that a debtor's acquisition of homestead protection for his or her property under state law

was not an acquisition of interest within the meaning of subsection (p)(1). These courts reasoned that

"interest" is concerned with the quantitative and monetary value in property to the debtor. The courts

were not blind to the fact that, under the state law pertinent to each case, "homestead" status added to

the bundle of sticks that define a debtor's title to the property, but each cout held that the modification

in property rights, the new sticks in the bundle, added nothing to the value of the property to the debtor

and therefore was not an acquisition of new interest under § 522(p). Of course, the acquisition of a fee

interest, when one has had no interest, *does* add to the value of the property to the debtor in a way that

the addition of homestead status does not. However, when the debtor previously had equity in the

property under one form of title (whether legal or equitable) and then acquired a new form of title to the same equity, the new title carries with it no more new interest than does the addition of homestead status (indeed sometimes less). I therefore find support in these cases for the proposition that a change in title that does not increase a debtor's equity is not an acquisition of interest within the meaning of § 522(p)(1).

In the facts pled by the Debtor, he acquired equity as a beneficiary of the trust when he used proceeds from the previous residence to pay down the debt on the current residence; and the later conveyance effected no change in the extent of his equity. I hold that, on these facts, the later conveyance would not disqualify the Debtor from relief under subsection (p)(2)(B), and therefore that the Debtor has pled a plausible basis for relief under that subsection.

### d.  Other Arguments

The parties have also advanced other arguments that can be more quickly addressed. First, the Trustee has argued that the proceeds from the previous residence could not have paid down the mortgage on the current residence because the mortgage had not yet been recorded at the time of the payment. The Trustee is inferring that, because the mortgage had not been recorded at the time of the payment, the mortgage was not then in existence. I agree with the premise of the Trustee's argument: that in order for the paydown of the loan from Dikran to have constituted an acquisition of equity, the loan needs to have been secured by an existing mortgage at the time, the mortgage being, in essence, a grant of title to secure payment of the loan. However, I disagree with the Trustee that, in order for the mortgage to have come into being, it needed to have been recorded. Recording perfects the mortgagee's rights against certain third parties (such as subsequent purchasers from the mortgagor) but adds nothing to the mortgagee's rights against the mortgagor. As between mortgagor and mortgagee, a mortgage is effective upon delivery and acceptance.

Second, the Trustee suggests that the safe harbor of subsection (p)(2)(B) cannot shelter the equity acquired by the paydown because, at no time prior to the eve of bankruptcy was either the prior residence or the current residence protected by a Massachusetts homestead exemption greater than $125,000 in value; an exemption in the amount of $500,000 would have required the recording of a declaration of homestead, and, the Trustee maintains, no declaration of homestead was filed as to either residence until the eve of bankruptcy, after the property had been conveyed by the Trust to the debtor and his wife. This argument, which the Trustee never fully develops, lacks merit because subsection (p)(2)(B) includes no requirement that the equity transferred from the prior residence to the current residence have been exempt or even exemptible at the time of the transfer.

Third, ORI has suggested that the safe harbor of subsection (p)(2)(B) should be unavailable to the Debtor because the Debtor and his wife held their current residence, including their equity in it, in a trust for a time.  ORI argued that the Congressional intent behind § 522(p)(1) was to guard against the "shenanigans" of a debtor's transferring property into a trust and then back to the debtor again. When asked, however, ORI was unable to point to evidence in the legislative history that concern for transfers of this kind informed the enactment § 522(p)(1). I am aware of no such purpose and see no reason in the language of subsection (p)(2)(B) to make its benefits unavailable to debtors who have held their "amount of interest" through a trust.[10]

Fourth, the Debtor has argued that, even if the Debtor were not entitled to the full $500,000 exemption, his wife would separately be able to shelter that full amount for the benefit of her family. That argument, whatever its merits, is presently irrelevant. The Trustee is not at present seeking to liquidate this property for the benefit of creditors. Rather, the purpose of the present objection is simply

---

[10] To be clear, ORI does not contend that the decisions by the Debtor and his wife to hold their current property in a trust and then to convey it back to themselves were nefarious in any way, only (apparently) that the statute was drafted to limit the exemptibility of property so held and transferred regardless of actual intent.

to determine the extent to which the Debtor's equity in the current residence is, by the Debtor's claim

of exemption, excluded from the bankruptcy estate.[11]

**CONCLUSION**

For the reasons set forth above, the Debtor's recourse to subsection (p)(2)(B) is not barred as a

matter of law. The Court will schedule an evidentiary hearing on the matter.


Date:  March 28, 2017

Frank J. Bailey
United States Bankruptcy Judge

---

[11] The parties expect that this issue will be pertinent to the ability of the Debtor to propose a plan that satisfies the requirement in 11 U.S.C. § 1325(a)(4), the so-called "best interest of creditors test." I make no determination about the extent of rights of the Debtor's wife or of the relevance of those rights to the § 1325(a)(4) inquiry.